Kenneth P. **WOLF,** Plaintiff, Appellant,

v.

**GRUNTAL & CO., INC.,**
Defendant, Appellee.

No. 94–1658.

United States Court of Appeals,
First Circuit.

Heard Oct. 5, 1994.

Decided Jan. 25, 1995.

---

Joseph P. Moodhe, New York City, with whom Debevoise & Plimpton, Ariadne D. Makris, Washington, DC, John P. McVeigh, Preti, Flaherty, Beliveau & Pachios, Portland, ME and Lionel G. Hest, New York City, were on brief for appellee.

Before CYR and STAHL, Circuit Judges, and DiCLERICO,* District Judge.

CYR, Circuit Judge.

Plaintiff Kenneth P. Wolf appeals a summary judgment order dismissing his Rule 10b–5 claim against defendant-appellee Gruntal & Co. ("Gruntal"), a securities brokerage firm, for fraudulently mismanaging Wolf's investment accounts in violation of Section 10(b) of the Securities and Exchange Act of 1934, 15 U.S.C. § 78j(b). As the district court erred in ruling that Wolf's claim was precluded by an earlier arbitral award, we vacate the judgment and remand for further proceedings.

## I

## *BACKGROUND*

Viewed in the light most favorable to appellant Wolf, *see Velez–Gomez v. SMA Life Assurance Co.,* 8 F.3d 873, 874–75 (1st Cir. 1993), the summary judgment record discloses the following facts. In March 1988, Wolf opened cash and margin accounts with Gruntal at its branch office in Portland, Maine. Wolf signed a Customer Agreement ("Agreement") which contained an arbitration clause: "[a]ny controversy between [Gruntal] and [Wolf] arising out of or relating to this contract or the breach thereof, shall be settled by arbitration.... *Notwithstanding the foregoing, arbitration shall not be mandated on claims asserting violation(s) of Federal securities/commodities laws.*" Agreement ¶ 16 (emphasis added). Paragraph 17 further provided that "th[e] agreement and its enforcement would be governed by New York law without giving effect to external law." *Id.* ¶ 17. Thereafter, between 1988 and 1990, a Gruntal agent fraudulently mismanaged Wolf's accounts, causing a loss approximating $1 million.

In December 1991, Wolf initiated the present action against Gruntal in the United

George S. Isaacson, with whom Brann & Isaacson and Peter D. Lowe, Lewiston, ME, were on brief for appellant.

* Chief Judge of the District of New Hampshire, sitting by designation.

States District Court for the District of Maine. The complaint asserted seven state-law claims, as well as one federal claim under the Securities and Exchange Act of 1934, 15 U.S.C. § 78j(b); Rule 10b–5, 17 C.F.R. § 240 (1993).[1] Gruntal moved to stay the district court proceedings pending arbitration on all eight claims.

The district court ruled that the arbitration clause in the Agreement unambiguously *permitted* Wolf to forego arbitration and to litigate the Rule 10b–5 claim in district court, but that the seven state-law claims were arbitrable. Since no party had sought to compel arbitration, however, the district court refused to stay its proceedings on the Rule 10b–5 claim pending arbitration and the parties proceeded with discovery.

In March 1993, Wolf submitted a unilateral demand for arbitration on the seven state-law claims; in December 1993, he recovered a $200,000 arbitral award against Gruntal. Gruntal thereafter moved for summary judgment in the district court, contending that the final arbitral award on the state-law claims precluded the Rule 10b–5 claim under the doctrine of *res judicata.*

The district court granted summary judgment. *Wolf v. Gruntal & Co.*, No. 91–426–P–H, 1994 WL 247814, 1994 U.S.Dist. LEXIS 7627 (D.Me. May 24, 1994). It correctly concluded that the Rule 10b–5 claim and the seven state-law claims arose out of the same "operative nucleus of fact" (*i.e.,* the ongoing account mismanagement by Gruntal). *Id.* 1994 WL 247814 at *2, 1994 U.S.Dist. LEXIS 7627 at *4 (citing *Kale v. Combined Ins. Co. of Am.,* 924 F.2d 1161, 1166 (1st Cir.), *cert. denied,* 502 U.S. 816, 112 S.Ct. 69, 116 L.Ed.2d 44 (1991)). As "Gruntal [had] made clear that it would accept arbitration of the [Rule 10b–5] claim," the district court envisioned no "jurisdictional obstacle" in the event Wolf had elected to submit the Rule 10b–5 claim to arbitration. Consequently, the court reasoned, the final arbitral award on the state-law claims precluded the Rule 10b–5 claim because Wolf "could have" presented the federal claim to arbitration. *Id.* 1994 WL 247814 at *2–3, 1994 U.S.Dist. LEXIS 7627 at *5, 6–7 (citing *Restatement (Second) of Judgments* § 84 (1982)).

Wolf argues that he reasonably relied on the district court's retention of "exclusive" (*i.e.,* sole and indefeasible) jurisdiction over the Rule 10b–5 claim and, as a consequence, that he was victimized by an unfair procedural ambush. Although we reject Wolf's characterization,[2] we hold that the district court erred in ruling that the federal securities claim was precluded by the arbitral award on the state-law claims.

## II

## DISCUSSION

### A. *Standards Of Review*

We review a grant of summary judgment *de novo,* under the identical legal components: (1) Gruntal misrepresented that its investments would comport with Wolf's low-risk investment objectives; (2) Gruntal fraudulently extended the one-month term of Wolf's margin account, without Wolf's knowledge or consent, in order to promote Gruntal's interests (*i.e.,* by using Wolf's credit to manipulate the price of stock (Secor/Novametrix) in waging its own "trading war"); and (3) Gruntal repeatedly concealed the unauthorized margin account activity by using Wolf's investment and "safekeeping" assets (*e.g.,* treasury bills) as collateral for his burgeoning margin account indebtedness to Gruntal.

---

1. Rule 10b–5, promulgated pursuant to section 78j(b), provides in pertinent part:

 It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange,

 (a) to employ any device, scheme, or artifice to defraud,

 (b) to make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

 (c) to engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person,

 in connection with the purchase or sale of any security.

 17 C.F.R. § 240 (1993).

 The Rule 10b–5 claim alleged that Gruntal's fraudulent scheme was comprised of three basic

2. The district court did not purport to oust or bar *concurrent* arbitral jurisdiction over the Rule 10b–5 claim. *See Wolf,* 1994 WL 247814, at *2–3, 1994 U.S.Dist. LEXIS 7627, at *5–6. Rather, its ruling simply recognized that the district court did possess jurisdiction over Wolf's Rule 10b–5 claim.

standards governing the district court, in order to determine whether "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that *the moving party is entitled to judgment as a matter of law.*" Fed.R.Civ.P. 56(c) (emphasis added); *see Jirau–Bernal v. Agrait*, 37 F.3d 1, 3 (1st Cir.1994). As the preclusive effect of a prior "judgment" is a question of New York law,[3] it too is subject to *de novo* review. *See, e.g., Gonzalez v. Banco Central Corp.*, 27 F.3d 751, 755 (1st Cir.1994).

### B. Res Judicata

■ *Res judicata* is not implicated if the forum which rendered the prior "judgment" (*viz.*, the arbitral award) lacked "jurisdiction" over the putatively precluded claim (*viz.*, the Rule 10b–5 claim). *See, e.g., Fiore v. Oak-wood Plaza Shopping Ctr., Inc.*, 189 A.D.2d 703, 592 N.Y.S.2d 720, 720–21 (1993); *Handy v. Westbury Teachers Ass'n*, 104 A.D.2d 923, 480 N.Y.S.2d 728, 731 (1984); *see also Nottingham Partners v. Trans–Lux Corp.*, 925 F.2d 29, 34 (1st Cir.1991); *Kale*, 924 F.2d at 1167; *Pasterczyk v. Fair*, 819 F.2d 12, 14 (1st Cir.1987).

■ Unlike collateral estoppel (issue preclusion), *res judicata* (claim preclusion) normally bars (i) relitigation of claims actually asserted in a tribunal of competent jurisdiction, *see Restatement (Second) of Judgments* § 26(1)(c) (1982),[4] and (ii) litigation of claims that arose from the same set of operative facts and *could have been raised* in the prior proceeding. *See, e.g., Hodes v. Axelrod*, 70 N.Y.2d 364, 520 N.Y.S.2d 933, 937, 515 N.E.2d 612, 616 (1987) (adopting "pragmatic" transaction test for determining which claims could have been raised in prior proceeding);

3. Citing instead to federal decisional law addressing certain *generic res judicata* concepts, *see, e.g., Pujol v. Shearson/American Express, Inc.*, 829 F.2d 1201, 1206–07 (1st Cir.1987) (prior arbitral awards may have preclusive effect), the district court did not consider *which jurisdiction's* law should guide a federal court in assessing the preclusive effect of a state-law based arbitral award which has not been *confirmed* in a judicial proceeding. Had Wolf's arbitral award been confirmed by a New York court, the resulting *judgment* presumably would be entitled to the same preclusive effect in federal court as it would be accorded by a New York court. *See* 28 U.S.C. § 1738 ("full faith and credit"); *see also, e.g., Oliveras v. Miranda Lopo*, 800 F.2d 3, 6 (1st Cir.1986) (citing *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81, 104 S.Ct. 892, 896, 79 L.Ed.2d 56 (1984); *Restatement (Second) of Judgments* §§ 84(1), 86. As section 1738's "full faith and credit" provision does *not* apply to unconfirmed arbitral awards, however, *see McDonald v. City of West Branch*, 466 U.S. 284, 287–88, 104 S.Ct. 1799, 1801–02, 80 L.Ed.2d 302 (1984) (for *res judicata* purposes, unless an arbitral award has received judicial confirmation, it is *not* the product of a "judicial proceeding" as defined in 28 U.S.C. § 1738), it afforded no support for the district court's ruling that Wolf's unconfirmed arbitral award was entitled to preclusive effect. *Cf. Wolf*, 1994 WL 247814, at *1–2, 1994 U.S.Dist. LEXIS 7627, at *4 (citing *Pujol*, 829 F.2d 1201, 1204 (1st Cir.1987) (where final arbitral award had been *confirmed* by state court)).

Moreover, since it is now settled law that the contracting parties may accede (or object) to an arbitral submission of federal securities claims based on Rule 10b–5, *see Shearson/Am. Express,*

*Inc. v. McMahon*, 482 U.S. 220, 227–38, 107 S.Ct. 2332, 2338, 96 L.Ed.2d 185 (1987) (Rule 10b–5 claims not presumptively nonarbitrable), we can discern no sound reason for not according comparable legal effect to the reasonable expectations of the contracting parties as embodied in the choice-of-law clause in their Agreement. *See Volt Info. Sciences, Inc. v. Board of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 478, 109 S.Ct. 1248, 1255, 103 L.Ed.2d 488 (1989) (arbitration law "simply requires courts to enforce privately negotiated agreements to arbitrate, *like other contracts*, in accordance with their terms") (emphasis added); *McCarthy v. Azure*, 22 F.3d 351, 356 (1st Cir.1994) (citing *Restatement (Second) of the Conflict of Laws* § 187 (1971) (courts should generally respect contractual choice-of-law provisions)). We therefore defer to the emphatic choice-of-law provision in the Wolf–Gruntal Agreement, *see supra* pp. 525–26 (contract "governed by New York law without giving effect to external law"), which necessarily encompassed New York *res judicata* principles.

4. Among the circumstances in which claim preclusion does not obtain are those in which "[t]he plaintiff was unable to rely on a certain theory of the case or to seek a certain remedy or form of relief in the first action *because of the limitations on the subject matter jurisdiction of the courts or restrictions on their authority to entertain multiple theories* or demands for multiple remedies or forms of relief in a single action, and the plaintiff desires in the second action to rely on that theory or to seek that remedy or form of relief...." *Restatement (Second) of Judgments* § 26(1)(c) (emphasis added).

*see also Federated Dep't Stores, Inc. v. Moitie,* 452 U.S. 394, 398, 101 S.Ct. 2424, 2427–28, 69 L.Ed.2d 103 (1981).

### C. *Arbitral Awards*

 Final arbitral awards are entitled to the same preclusive effect as state court judgments, at least as concerns claims and issues actually raised. *See Rembrandt Indus., Inc. v. Hodges Int'l, Inc.,* 38 N.Y.2d 502, 381 N.Y.S.2d 451, 452, 344 N.E.2d 383, 384 (1976); *see also Khandhar v. Elfenbein,* 943 F.2d 244, 247 (2d Cir.1991) (N.Y. law); *Katz v. Financial Clearing & Servs. Corp.,* 794 F.Supp. 88, 94 (S.D.N.Y.1992) (same); *cf. Pujol v. Shearson/American Express, Inc.,* 829 F.2d 1201, 1206–07 (1st Cir.1987); *infra* note 6 and accompanying text. By the same token, we conclude that New York recognizes the same "jurisdictional" limitation upon the reach of *res judicata* coverage with respect to prior arbitral awards as is generally applied to final judgments, *cf. Restatement (Second) of Judgments* § 26(1)(c), *supra* note 4. We explain.

 Because arbitral awards are not "judgments" *per se,* it cannot be presumed, as the district court did, that an arbitral tribunal acquired competent authority over the putative "precluded" claim for *res judicata* purposes. Unlike federal courts of limited jurisdiction and state courts of general jurisdiction, wherein a litigant, with standing, *unilaterally* may invoke the appropriate judicial tribunal's jurisdiction based on extrinsic constitutional, statutory, or common law authority, *see Cine–Source, Inc. v. Burrows,* 180 A.D.2d 592, 581 N.Y.S.2d 9, 10 (1992), arbitral tribunals' authority over particular "claims" is for the most part *predetermined by contract;* that is, by *written agreement of the parties. Id.* (noting, as basis for limiting *res judicata* effect of arbitral awards, that "the authority of an arbitrator to decide a controversy is derived entirely from the *consent* of the parties").

Arbitral "claims" comprise two subsets for purposes of the jurisdictional analysis required under the present analogue to Restatement § 26(1)(c). First, where the parties have contracted to submit *all* disputes or controversies to arbitration, *either* party may compel arbitration simply by submitting a *unilateral* "demand for arbitration," relying on the broad-based agreement to arbitrate as the sole *source* of arbitral authority. *See, e.g.,* N.Y.Civ.Prac.L. & R. § 7503(c) (1993); *Cohen v. Cohen,* 17 A.D.2d 279, 233 N.Y.S.2d 787, 791 (1962) (describing arbitration proceedings which may be commenced on unilateral "demand"). Second, even where the contract either includes no arbitration clause or excludes particular kinds of "claims" from arbitration, the contracting parties later may agree in writing to arbitrate any or all such otherwise nonarbitrable claims ("uncovered claims"), simply by entering into a joint arbitral "submission." *Id.* As arbitral "jurisdiction" is dependent upon a written agreement between the parties,[5] however, any exercise of arbitral authority over uncovered claims—absent a "meeting of the minds" duly memorialized in a joint arbitral submission—would constitute an *exces de pouvoir. See* N.Y.Civ. Prac.L. & R. § 7501 (putative agreements to arbitrate are *unenforceable* unless reduced to writing).

### D. *The Scope of the Arbitration Clause*

 The arbitration clause in the Agreement, which provides that "arbitration shall not be mandated on claims asserting violation(s) of Federal securities/commodities laws," places Wolf's Rule 10b–5 claim squarely into the latter category. *Cf. Church v. Gruntal & Co.,* 698 F.Supp. 465, 468–69 (S.D.N.Y.1988) (holding that *identical* contract language excluded Rule 10b–5 claim from arbitration). As the district court recognized, the Agreement expressly provided that all *non-federal* securities disputes were to be arbitrated but conferred no arbitral authority over the Rule 10b–5 claim. Nor did the Agreement *require* Wolf to initiate an arbitral "submission" encompassing the Rule 10b–5 claim. *See Rembrandt Indus., Inc. v.*

---

**5.** Although there no longer exists an impenetrable extrinsic "jurisdictional" obstacle to arbitral authority over Rule 10b–5 claims, *see McMahon,* 482 U.S. at 227–38, 107 S.Ct. at 2337–44, *supra* note 3, arbitral authority over such a claim nonetheless depends upon the mutual consent of the parties.

*Hodges Int'l, Inc.,* 46 A.D.2d 623, 359 N.Y.S.2d 807, *aff'd,* 381 N.Y.S.2d at 452, 344 N.E.2d at 384 ("Where, however, [a 'compulsory' counterclaim, arising from the same transaction,] not passed upon by the arbitrators is the subject of a later action; obviously the [arbitral] award is not a bar to that action."); *Cine–Source,* 581 N.Y.S.2d at 10 (rejecting, in the context of a broad-based arbitration clause, the contention that "res judicata applies not only to [claims] which were actually decided in arbitration but also to those which *could have been asserted....*"); *Lopez v. Parke Rose Management Sys., Inc.,* 138 A.D.2d 575, 526 N.Y.S.2d 156, 158 (1988) ("[T]he doctrines of collateral estoppel and res judicata apply to arbitration awards, ... [h]owever, where an issue not passed upon by an arbitrator is the subject of a subsequent action, the award is not a bar to that action...."); *Conforti & Eisele, Inc. v. William J. Scully, Inc.,* 98 A.D.2d 646, 469 N.Y.S.2d 400, 400–01 (1983) (holding no *res judicata* effect to "limited" arbitral submission, even where plaintiff *presented,* then *withdrew,* the same "claims" from the first arbitrator during arbitration).[6]

As the proponent of the *res judicata* defense, Gruntal was charged with the burden of proving, *see Rembrandt,* 381 N.Y.S.2d at 452, 344 N.E.2d at 384 (claim and issue preclusion); *see also Kaufman v. Eli Lilly & Co.,* 65 N.Y.2d 449, 492 N.Y.S.2d 584, 588, 482 N.E.2d 63, 67 (1985) (same collateral estoppel); *Clark v. Scoville,* 198 N.Y. 279, 91 N.E. 800, 802 (1910) (same); *cf. also Blonder–Tongue Lab., Inc. v. University of Ill. Found.,* 402 U.S. 313, 350, 91 S.Ct. 1434, 1453–54, 28 L.Ed.2d 788 (1971); *Clark v. Bear Stearns & Co.,* 966 F.2d 1318, 1321 (9th Cir.1992), at a bare *minimum, cf. supra* note 6, that the arbitral forum possessed jurisdiction over the Rule 10b–5 claim *at the time Wolf demanded arbitration on the state-law claims.* Notwithstanding the prediction indulged by the district court—that Gruntal would have been amenable to arbitration in March 1993—the Rule 10b–5 claim was *mutually withheld* from arbitration under the express terms of the Agreement, and no joint arbitral submission was ever attempted or memorialized between Wolf and Gruntal.

Under New York law, *see, e.g., Cine–Source,* 581 N.Y.S.2d at 10, absent a *bilateral, written* submission, an arbitral forum (unlike a judicial forum exercising its *presumptive* jurisdiction) could not acquire "jurisdiction" over Wolf's Rule 10b–5 claim. Consequently, the arbitral award *could not* preclude later litigation of the Rule 10b–5 claim in federal district court. *See, e.g., Clark,* 966 F.2d at 1321 ("[P]ursuant to the terms of Bear Stearns' [contractual] agreement with Clark ... the arbitration panel did not have subject matter jurisdiction over Clark's federal claims, [and] Clark could not have brought them in the prior [arbitration] proceeding.").[7] Of course, had Gruntal wished to impress the ensuing arbitral award with

---

**6.** Indeed, as indicated in the accompanying text, the circumstances in these New York cases suggest a far narrower application of *res judicata* principles in the context of arbitral awards than need be deployed here. Thus, even in circumstances where *either* party could have submitted a particular claim or issue to compelled arbitration pursuant to a broad-based, written arbitration clause conferring "jurisdiction" upon an arbitral forum, the governing preclusion principles under New York law would bar only claims or issues *actually submitted* to arbitration.

**7.** The district court apparently misapprehended the thrust of the *Clark* case citation to *Dean Witter Reynolds, Inc. v. Byrd,* 470 U.S. 213, 220 n. 6, 105 S.Ct. 1238, 1242 n. 6, 84 L.Ed.2d 158 (1985), for the overbroad proposition that enforcement of an arbitration agreement "ousts" a court from jurisdiction over the entire dispute. *See Wolf,* 1994 WL 247814, at *3, 1994 U.S. Dist. LEXIS 7627, at *7 (citing *Clark,* 966 F.2d at 1321). Viewed in context, the *Clark* citation to

*Byrd* merely emphasized that the Federal Arbitration Act had been enacted to "ensure judicial enforcement of privately made agreements to arbitrate" *even if* that "require[ed] *piecemeal resolution* when necessary to give effect to an arbitration agreement." *Byrd,* 470 U.S. at 220–21, 105 S.Ct. at 1242–43 (quoting *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24–25, 103 S.Ct. 927, 941–42, 74 L.Ed.2d 765 (1983)) (emphasis added). Thus, in *Clark,* as here, the district court retained *exclusive* jurisdiction over the Rule 10b–5 claim absent a written, bilateral agreement to the contrary.

Gruntal cites *Kelly v. Merrill Lynch, Pierce, Fenner & Smith,* 985 F.2d 1067, 1069–70 (11th Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 600, 126 L.Ed.2d 565 (1993), to no avail. There, the "precluding" judgment had been rendered by a federal district court presumptively vested with "federal question" jurisdiction over the plaintiff's uncovered Rule 10(b)(5) claim, as well as with pendent jurisdiction over his four state-law

preclusive effect vis-a-vis the Rule 10b–5 claim, it could have endeavored to persuade Wolf to join an arbitral submission. *See Ticker v. Trager*, 106 A.D.2d 443, 482 N.Y.S.2d 535, 536 (1984) ("No one is under a duty to resort to arbitration unless by clear language he has so agreed.") (quoting *Lehman v. Ostrovsky*, 264 N.Y. 130, 132, 190 N.E. 208 (1934)).

### III

### *CONCLUSION*

Although Wolf incorrectly represents that the district court ousted or impeded arbitral jurisdiction over the Rule 10b–5 claim, *see supra* note 2, the district court nonetheless retained *exclusive* jurisdiction over the Rule 10b–5 claim absent an enforceable arbitral submission encompassing the Rule 10b–5 claim. Consequently, Gruntal was not entitled to judgment as a matter of law, *see Jirau-Bernal*, 37 F.3d at 3, and the district court judgment dismissing the Rule 10b–5 claim on claim preclusion grounds must be vacated.

**The district court judgment is vacated. The case is remanded for further proceedings consistent with this opinion. Costs to appellant.**

claims. As the defendant's *consent* was not necessary to enable plaintiff Kelly to assert his state-law claims in the federal district court action, *res* judicata did indeed preclude later arbitration of the pendent state-law claims. *Id.*