# United States Court of Appeals
## For the First Circuit

No. 23-2070

ROSEMARY MORGAN-LEE,

Plaintiff, Appellant,

UNITED STATES, ex rel. ROSEMARY MORGAN-LEE; COMMONWEALTH OF
MASSACHUSETTS, ex rel. ROSEMARY MORGAN-LEE; STATE OF RHODE
ISLAND, ex rel. ROSEMARY MORGAN-LEE,

Plaintiffs,

v.

THERAPY RESOURCES MANAGEMENT, LLC,

Defendant, Appellee,

THE WHITTIER HEALTH NETWORK, INC.; HEALTH CONCEPTS, LTD, d/b/a
Bayberry Commons, d/b/a Eastgate Nursing and Recovery Center,
d/b/a Elmwood Health Center, d/b/a Heritage Hills Nursing and
Rehabilitation Center, d/b/a Morgan Health Center, d/b/a Pine
Grove Health Center, d/b/a Riverview Nursing Home, d/b/a South
Kingstown Nursing & Rehabilitation Center, d/b/a Village House
Nursing and Rehabilitation Center, d/b/a Westerly Health Center,
d/b/a West Shore Health Center, d/b/a Woodpecker Hill Health
Center; DIOCESAN FACILITIES SELF-INSURANCE GROUP, INC., d/b/a
Our Lady's Haven of Fairhaven, d/b/a Catholic Memorial Home,
d/b/a Madonna Manor, d/b/a Marian Manor, d/b/a Sacred Heart
Home; UMA RAJAGOPAL, individually and in her official capacity;
HDH CORPORATION, d/b/a Hannah Duston Healthcare Center; LNF
CORPORATION, d/b/a Masconomet Healthcare Center; MBO
CORPORATION, d/b/a Nemasket Healthcare Center; ARBETTER
CORPORATION, d/b/a Oak Knoll Healthcare Center; NWB CORPORATION,
d/b/a Port Healthcare Center; MRN CORPORATION, d/b/a Sippican
Healthcare Center,

Defendants.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Douglas P. Woodlock, <u>U.S. District Judge</u>]

—————————

Before

Gelpí, Lynch, and Howard,
<u>Circuit Judges</u>.

—————————

Jeremy L. Friedman, with whom <u>Law Office of Jeremy L. Friedman</u>, <u>Louise A. Herman</u>, and <u>Herman Law Group</u> were on brief, for appellant.

Charles D. Blackman, with whom <u>Levy & Blackman LLP</u> was on brief, for appellee.

—————————

February 24, 2025

—————————

LYNCH, **Circuit Judge**.  After a four-day bench trial, the district court held Rosemary Morgan-Lee had not proven that her former employer Therapy Resources Management, LLC ("TRM") had discharged her in violation of the whistleblower protections of the False Claims Act ("FCA"), 31 U.S.C. § 3730(h), and the Rhode Island Whistleblowers' Protection Act ("RIWPA"), R.I. Gen. Laws §§ 28-50-1 to -9 (2024).  The court made findings of fact in her favor that she had engaged in some protected activity and that TRM had general corporate knowledge of her protected activity.  The court went on to find, citing Lestage v. Coloplast Corp., 982 F.3d 37, 46 (1st Cir. 2020), that she had not shown that but for her protected conduct she would not have been discharged.

On appeal, Morgan-Lee argues that the district court committed errors of law and that its factual findings were clearly erroneous.  Many of her arguments are waived and unpreserved and at times mischaracterize the record.  We reject her arguments, all of which lack merit, and affirm.  The district court's seventy-six-page Memorandum of Findings of Fact and Conclusions of Law properly stated and applied the applicable law, and each of its findings, including as to her failure to show the requisite causation, is well-supported by the record.

## I.

Following voluntary dismissal and settlement of most of Morgan-Lee's claims against numerous defendants, what remained

- 3 -

were only the FCA and RIWPA[1] whistleblower-retaliation claims against TRM which are the subject of this appeal.[2] A 2017 jury trial on the retaliation claims resulted in a mistrial after a juror refused to answer on being polled. The district court denied Morgan-Lee's Renewed Motion for Judgement as a Matter of Law[3] and

---

[1] Although this case was filed in the District of Massachusetts, Morgan-Lee was employed by TRM in Rhode Island, and thus brought a claim under Rhode Island's whistleblower statute. The district court had jurisdiction over that claim under 28 U.S.C. § 1367.

[2] Much of the earlier history of this case is not relevant to the issues on appeal, so we describe it briefly. This case began as a qui tam action filed on August 19, 2013, against TRM and various entities doing business with TRM, alleging that the defendants violated the FCA and its Massachusetts and Rhode Island analogs by, inter alia, submitting "false and fraudulent claims for payment or approval to the United States, [Massachusetts, and Rhode Island]." Morgan-Lee also alleged that "TRM unlawfully retaliated against [her] because of her efforts to stop [the] [d]efendants from engaging in violations of the [FCA] and the [RIWPA]."

[3] We do not consider Morgan-Lee's argument that the district court's 2017 denial of her Renewed Motion for Judgment as a Matter of Law under Federal Rule of Civil Procedure 50 was not supported by the evidence. We lack jurisdiction to consider it because "[o]nce the case proceeds to trial, the full record developed in court supersedes the record existing at the time of the [earlier] motion." Hisert ex rel. H2H Assocs., LLC v. Haschen, 980 F.3d 6, 8 (1st Cir. 2020) (first alteration in original)(quoting Ortiz v. Jordan, 562 U.S. 180, 184 (2011)); see also Dupree v. Younger, 598 U.S. 729, 734 (2023) ("Some interlocutory district-court rulings . . . are unreviewable after final judgment because they are overcome by later developments in the litigation."). As Morgan-Lee herself stated, "[t]he [b]ench [t]rial [u]nearthed the [c]onclusive [r]ecord of [w]hen, and on [w]hat [b]asis, [she] was [f]ired," barring her arguments challenging the Rule 50 ruling following the earlier jury trial.

- 4 -

conducted a bench trial for Morgan-Lee's claims pursuant to a joint stipulation.  The district court tried the case over four days, during which it heard live testimony or received written testimony from ten witnesses and made credibility findings.[4]

On November 13, 2023, the district court issued its Memorandum.  As to causation, the court applied this standard, citing Lestage, 982 F.3d at 46: "Ms. Morgan-Lee can prevail on her retaliation claim only if she can demonstrate that, but for her FCA-protected activity, she would have kept her job."  The court made its factual findings that she "ha[d] not proven by a preponderance of the evidence that she was fired because she engaged in protected activity."  The district court found

> that she was discharged because of a spate of unapproved absences and an outright refusal to provide specifics about purported fraudulent activity, even though that was her job.  The breakdown of Ms. Morgan-Lee's employment relationship was the culmination of an escalating pattern of erratic, confrontational, and frequently insubordinate communications by Ms. Morgan-Lee with superiors and colleagues, rather than the product of any retaliatory animus on the part of TRM. . . . The evidence show[ed] . . . that the issue that ultimately motivated [TRM] to dismiss Ms. Morgan-Lee was a combination of her repeated unexcused absences from work in the weeks preceding her firing and her

---

[4]    These witnesses were: plaintiff Morgan-Lee; Armand Bergeron, former co-owner of TRM; Uma Rajagopal, former CEO and President of TRM; Brian Lewis, former attorney for TRM; Albin Moser, former attorney for Morgan-Lee; Brian Pontolilo, former co-owner of TRM; Allan Feldman, Morgan-Lee's expert witness; Robert Scott, former Vice President of Human Resources at TRM; Theresa Lewis, former TRM employee; Ronald Diurba, former co-owner of TRM.

unwillingness to provide TRM with details of the fraud that she claimed to have found.

## II.

We read Morgan-Lee's briefs as attempting to make two claims of legal error, one about use of Maturi v. McLaughlin Research Corp., 413 F.3d 166 (1st Cir. 2005), and the second going to causation and burden-shifting. The Maturi argument, as we explain below, is the opposite of what she argued to the district court and so is barred by estoppel; in any event it is entirely without merit. The second argument seems to have two components, one challenging the district court's causation standard and the other its burden-shifting framework, but the argument is unclear. The argument fails in its entirety on the merits and at least its second component is waived and estopped. We review properly preserved arguments of legal error following bench trials de novo. See ST Eng'g Marine, Ltd. v. Thompson, Maccoll & Bass, LLC, 88 F.4th 27, 32 (1st Cir. 2023).

Morgan-Lee first argues that the standard for when an employer is charged with knowledge that an employee is engaged in protected conduct under Maturi, 413 F.3d at 173 (2005), did not survive the 2009 amendments to the FCA.[5] This is a reversal of

---

[5] She makes the argument although the district court found in her favor that she had engaged in protected conduct and TRM had general corporate knowledge of this protected conduct under Maturi.

- 6 -

the position she took in the district court, where she argued that the court should apply the Maturi standard. She is both estopped and has waived the argument on appeal. See Patton v. Johnson, 915 F.3d 827, 836-37 (1st Cir. 2019) ("We think it self-evident that a party cannot invite the trial court to employ one source of applicable law and then -- after the trial court has accepted h[er] invitation -- try to convince the court of appeals that some other source of law would be preferable."); Medina-Rivera v. MVM, Inc., 713 F.3d 132, 141 (1st Cir. 2013) ("[T]heories not squarely presented below typically cannot be advanced here.").

Even had the appellate argument been properly presented, it fails. This court ruled on the 2009 FCA amendments in United States ex rel. Booker v. Pfizer, Inc., 847 F.3d 52 (1st Cir. 2017), and we held that the amendments did not alter the requirement that protected conduct "must pertain to violations of the FCA," see id. at 59 n.8. Under Booker, it is clear the 2009 FCA amendments did not alter Maturi.

Maturi held that "where an employee's job responsibilities involve overseeing government billings or payments, h[er] burden of proving that h[er] employer was on notice that [s]he was engaged in protected conduct should be heightened." 413 F.3d at 173. In such cases, an employee "must make it clear that h[er] actions go beyond h[er] regular duties" so that "employers [are] disciplined for taking adverse action against

- 7 -

their employees only when they are aware that the employees were engaged in protected conduct." Id. at 172-73. The 2009 FCA amendments did not undercut this holding and reasoning. Rather, the amendments "clarified that the [anti-retaliation] provision covers not only steps in the litigation process . . . but also measures . . . which might not be taken in direct furtherance of an actual lawsuit." Booker, 847 F.3d at 59 n.8. "[T]he amended provision maintains the requirement . . . that even those activities must pertain to violations of the FCA." Id. Given the endurance of that nexus requirement, Maturi's heightened burden on employees who oversee government billing or payments is all the more critical, as the expanded scope of protected activity only renders more obscure to employers which of these employees' actions go beyond regular duties and "pertain to violations of the FCA." See id.

The Tenth Circuit has similarly held that the rule "that compliance employees typically must do more than other employees to show that their employer knew of the protected activity" "survived the 2009 [FCA] amendment." United States ex rel. Reed v. KeyPoint Gov't Sols., 923 F.3d 729, 767 (10th Cir. 2019).[6] It explained that even under the 2009 amendments, "a relator's actions still must convey a connection to the [False Claims Act]." Id.

---

[6] We reject Morgan-Lee's argument that we instead adopt Mooney v. Fife, 118 F.4th 1081, 1095 (9th Cir. 2024).

(alteration in original). The rationale underlying the rule was that "an employer might reasonably presume that when a compliance employee reports incidents of fraud she is just doing her job," so such an employee must "overcome that presumption by showing that she was engaging in protected activity, not just doing her job." Id. The Tenth Circuit held that "nothing about the 2009 amendment undercuts th[is] rationale." Id. We agree with this reasoning.

Morgan-Lee's second assertion of purported legal error is unclear but seems to have two components. She first argues inconsistently that the district court was required to apply the McDonnell Douglas burden-shifting framework but then argues, contrary to McDonnell Douglas, that once she establishes a prima facie case the burden of both production and persuasion moves to the employer. See McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-03 (1973). We bypass the question of whether the argument was made in any clear form to the district court and reject it as contrary to our case law.

We held in Lestage that the McDonnell Douglas framework applies to FCA retaliation claims, under which "[o]nce the plaintiff makes out a prima facie case, the burden shifts to the employer to articulate a non-retaliatory reason for the adverse employment action." 982 F.3d at 47. "This is merely a burden of production," id., not of persuasion as Morgan-Lee would have it. The district court's decision was entirely consistent with this

framework.  The court found, based on TRM's presented evidence, that "TRM had multiple legitimate, nonretaliatory reasons to fire Ms. Morgan-Lee, and it is more likely than not that one, or some combination, of those reasons was the cause of her termination."

Morgan-Lee next attempts to argue the district court erred in using "but-for" causation, but in the district court, she urged the use of that standard, so once again she is estopped. See Patton, 915 F.3d at 836.  But in any event, she is wrong.  We have held that FCA retaliation claims are subject to the but-for causation standard.  See Lestage, 982 F.3d at 46 (citing Univ. of Tex. Sw. Med. Ctr. v. Nassar, 570 U.S. 338, 352 (2013)).  A plaintiff "must establish that his or her protected activity was a but-for cause of the alleged adverse action by the employer." Nassar, 570 U.S. at 362.

The majority of our sister circuits agree that but-for causation applies to FCA retaliation claims.  See Mooney v. Fife, 118 F.4th 1081, 1090 (9th Cir. 2024); United States ex rel. Barrick v. Parker-Migliorini Int'l, LLC, 79 F.4th 1262, 1277 (10th Cir. 2023); Nesbitt v. Candler Cnty., 945 F.3d 1355, 1359-60 (11th Cir. 2020), DiFiore v. CSL Behring, LLC, 879 F.3d 71, 76–78 (3d Cir. 2018); United States ex rel. King v. Solvay Pharms., Inc., 871 F.3d 318, 333 (5th Cir. 2017) (per curiam); United States ex rel. Cody v. ManTech Int'l, Corp., 746 F. App'x 166, 176-77 (4th Cir. 2018).

- 10 -

The district court correctly applied this standard in finding that "Morgan-Lee ha[d] not shown by a preponderance of the evidence that her protected activity was a but-for cause of her termination."[7]

The attack on the district court's extensive and sensible findings of fact as clear error also fails. We are not free to reject the district court's findings of fact unless, on the record as a whole, we form a strong, unyielding belief that a mistake has been made. Richard v. Reg'l Sch. Unit 57, 901 F.3d 52, 60 (1st Cir. 2018). In particular, "[w]e have repeatedly said that 'in a bench trial, credibility calls are for the trier.'" Sawyer Bros., Inc. v. Island Transporter, LLC, 887 F.3d 23, 31 (1st Cir. 2018) (quoting Carr v. PMS Fishing Corp., 191 F.3d 1, 7 (1st Cir. 1999)). Indeed, the court found Morgan-Lee's account of key events not credible, that "her perceptions were frequently distorted," and that "some of [her] testimony about interactions with her colleagues [wa]s unreliable."

The district court found as fact that there were a number of legitimate, non-retaliatory reasons for Morgan-Lee's discharge, including that she "repeatedly missed work on minimal notice" and

---

[7]  Morgan-Lee's reply brief attempts to suggest Bostock v. Clayton County, 590 U.S. 644 (2020), altered the but-for causation test. This argument is both waived because it was not made in the opening brief, see BioChemics, Inc. v. AXIS Reins. Co., 924 F.3d 633, 644 n.8 (1st Cir. 2019), and is incorrect. Our decision in Lestage was published after, and is consistent with, Bostock.

"refus[ed] to give details of her claimed findings of impropriety." The court found that "the communications to her from [former TRM Vice President of Human Resources] Mr. Scott and from TRM's attorneys made clear that her unexcused . . . absences were a significant issue." "Mr. Scott credibly testified that Ms. Morgan-Lee refused to provide him with any specific examples of the fraudulent conduct to which she continually referred" and "[i]n her own testimony, and in contemporaneous emails, Ms. Morgan-Lee acknowledged as much." Further, the court found that Morgan-Lee's "unproductive and disruptive" behavior even before these events "would itself have provided a valid, non-retaliatory reason to fire her."

The court's findings of lack of but-for causation, many of which were informed by its assessment of the credibility of witness testimony, are well-supported.

We **affirm**. Costs are awarded to TRM.